UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**
NOV 2 1 2002
WAYNE R. ANDERSEN
U. S. DISTRICT COURT JUDGE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 02 CR 224 |
| v. | ) | |
| | ) | Hon. Wayne R. Andersen |
| JOSEPH D. KONOPKA | ) | |
| | ) | |

DOCKETED
NOV 2 5 2002

## PLEA AGREEMENT

This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and the defendant, JOSEPH D. KONOPKA, and his attorney, MATTHEW MADDEN, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure.

This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 02 CR 224.

This Plea Agreement concerns criminal liability only, and nothing herein shall limit or in any way waive or release any administrative or judicial civil claim, demand or cause of action, whatsoever, of the United States or its agencies. Moreover, this Agreement is limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities except as expressly set forth in this Agreement.



By this Plea Agreement, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, and the defendant, JOSEPH D. KONOPKA, and his attorney, MATTHEW MADDEN, have agreed upon the following:

1. Defendant acknowledges that he has been charged in the indictment in this case with possession of a chemical weapon in violation of Title 18, United States Code, Section 229(a)(1).

2. Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

3. Defendant fully understands the nature and elements of the crimes with which he has been charged.

4. Defendant will enter a voluntary plea of guilty to Count One and Count Two of the indictment in this case.

5. Defendant will plead guilty because he is in fact guilty of the charges contained in Count One and Count Two of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

(a) With respect to Count One of the indictment, defendant admits that on or about March 9, 2002, at Chicago, in the Northern District of Illinois, defendant knowingly retained and possessed a chemical weapon, namely sodium cyanide, which is a toxic chemical not intended by the defendant to be used for a peaceful purpose as that term is

defined in Title 18, United States Code, Section 229F(7)(A), in violation of Title 18 United States Code, §229(a)(1).

  (b) With respect to Count Two, the defendant admits that on or about March 9, 2002, at Chicago, in the Northern District of Illinois, defendant knowingly retained and possessed a chemical weapon, namely potassium cyanide, which is a toxic chemical not intended by the defendant to be used for a peaceful purpose as that term is defined in Title 18, United States Code, Section 229F(7)(A), in violation of Title 18, United States Code, § 229(a)(1).

  (c) Specifically, during the summer of 2001, defendant obtained a bottle containing approximately 1 lbs. of sodium cyanide and a bottle containing approximately 1/4 lbs. of potassium cyanide from an abandoned warehouse near 49th Street and Halsted Avenue. Defendant obtained these bottles of cyanide by entering the abandoned warehouse with N.W., who was approximately 15 years of age at the time. Defendant and N.W. then removed a bottle marked "sodium cyanide" and a bottle marked "potassium cyanide" from the warehouse. Each bottled contained the respective chemicals as marked. Additionally, defendant and N.W. removed some other bottles of chemicals from the warehouse. Defendant then transported the bottles containing cyanide on the blue line of the Chicago Transit Authority ("CTA"). Defendant stored the bottles of cyanide in a substation near the Washington-Dearborn stop of the CTA blue line. Defendant kept the sodium cyanide and potassium cyanide with other belongings that he kept in the substation. Defendant was aware

that the chemical substances that he possessed were sodium cyanide and potassium cyanide, and was further aware that both sodium cyanide and potassium cyanide were harmful to individuals.

(d) Defendant made known to others that he possessed cyanide, either by specifically telling them that he possessed cyanide, and/or by showing them a vial of cyanide that he regularly carried with him, and suggesting that the vial contained cyanide.

(e) When government officials became aware that defendant possessed cyanide within the CTA system, the CTA blue line and the CTA red line were shut down, and members of the Chicago Fire Department, the FBI Hazardous Material Team, and other public servants were required to search the tunnels of the blue line and red line to locate the cyanide, and to determine that no other cache of cyanide was within the system. As a result of these activities, service on the CTA blue line was discontinued from approximately 1:50 p.m. to approximately 8:30 p.m. on March 9, 2002, and service on the CTA red line was discontinued from approximately 1:50 p.m. to approximately 4:20 p.m. on March 9, 2002.

(f) Additionally, defendant did not possess the sodium cyanide and potassium cyanide for any peaceful purpose, for the purpose of protecting against any chemical weapons, for any lawful military purpose, or for any law enforcement purpose. Finally, both sodium cyanide and potassium cyanide can cause death, or permanent harm to humans through their chemical action on life processes.

6.  For purposes of applying the guidelines promulgated by the United States Sentencing Commission pursuant to Title 28, United States Code, Section 994, the parties agree on the following points, ~~and disagree on the following point as noted~~:

(a) The base offense level for these offenses is level twenty-eight (28) because defendant possessed a chemical weapon as defined by statute. Pursuant to the Sentencing Guidelines, possession of the chemical weapon is conduct evidencing an intent to use the weapon. USSG § 2M6.1(a)(2).

(b) Pursuant to Guideline § 3D1.2, the offenses of conviction should be grouped together into a single group.

(c) The offense resulted in substantial disruption of public and government services and function, and resulted in a substantial expenditure of funds to respond to the offense. Therefore, the offense level is increased by four (4) levels. USSG § 2M6.1(b)(3).

(d) The defendant used minors to commit the offense and to assist in avoiding detection of the offense. Therefore, the offense level is increased by two (2) levels. USSG § 3B1.4.

(e) Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if the defendant continues to accept responsibility for his actions, within the meaning of Guideline 3E1.1, a two-level (2) reduction in the offense level is appropriate.

(f) Defendant has notified the government timely of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently, within the meaning of Guideline 3E1.1(b); an additional one-level (1) reduction in the offense level is therefore appropriate, provided the court determines the offense level to be 16 or greater prior to the operation of Guideline 3E1.1(a).

(g) On or about February 9, 1995, defendant was convicted of burglary in Brown County, Wisconsin Circuit Court, and sentenced to 5 months incarceration, and four years probation. Defendant receives two criminal history points. USSG § 4A1.1(b).

(h) On or about April 25, 1996, defendant was convicted of theft in Waukesha County, Wisconsin Circuit Court and sentenced to 10 months incarceration. Defendant receives two criminal history points. USSG § 4A1.1(b).

(i) Based on the facts known to the government and stipulated in subparagraphs (e) through (f) above, the defendant's criminal history points equal four (4) and the defendant's criminal history category is III; and

(j) The defendant and his attorney and the government acknowledge that the above calculations are preliminary in nature and based on facts known to the government as of the time of this Agreement. The defendant understands that the Probation Department will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Sentencing

Guidelines calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations.

7. Errors in calculations or interpretation of any of the guidelines may be corrected by either party prior to sentencing. The parties may correct these errors or misinterpretations either by stipulation or by a statement to the probation office and/or court setting forth the disagreement as to the correct guidelines and their application. The validity of this Agreement will not be affected by such corrections, and the defendant shall not have a right to withdraw his plea on the basis of such corrections.

8. Defendant understands the counts to which he will plead guilty carry the following penalties:

    (a) Count I and Count II each carry a maximum penalty of a period of imprisonment of any term of years and a maximum fine of $250,000.

    (b) Defendant understands that these counts also carry a term of supervised release of at least three years but not more than five years, which the court may specify.

9. The defendant understands that in accord with federal law, Title 18, United States Code, Section 3013, upon entry of judgment of conviction, the defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty imposed. The defendant agrees to pay the special assessment of $200 at the time of sentencing with a check or money order made payable to the Clerk of the U. S. District Court.

10. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

(a) If defendant persisted in a plea of not guilty to the charges against him, he would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by the judge sitting without a jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

(b) If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of defendant's guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately.

(c) If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded of defendant's guilt beyond a reasonable doubt.

(d) At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court.

(e) At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

11. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraph. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and only may appeal the validity of this plea of guilty or the sentence.

12. Defendant understands that the indictment and this Plea Agreement are matters of public record and may be disclosed to any party.

13. Defendant understands that the United States Attorney's Office will fully apprise the District Court and the United States Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against him, and related matters, including all matters in aggravation and mitigation relevant to the issue of sentencing.

14. At the time of sentencing, the government is free to recommend that the Court impose a sentence at any point within the applicable guideline range.

15. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and, subject to the limitations of the sentencing guidelines, may impose the maximum penalties as set forth in paragraph eight (8) above. The defendant further acknowledges that if the court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

16. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

17. Defendant agrees this Plea Agreement shall be filed and become a part of the record in this case.

18. Should the judge refuse to accept the defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound thereto.

19. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _____11/21/02_____

_____
PATRICK J. FITZGERALD
United States Attorney

_____
M. DAVID WEISMAN
Assistant United States Attorney

_____
JOSEPH KONOPKA
Defendant

_____
MATTHEW MADDEN
Attorney for Defendant